UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YOSELIN PENA,                                    :

                Plaintiff,                  :

            -against-                      :   REPORT AND RECOMMENDATION

COMMISSIONER OF SOCIAL SECURITY, :   13-CIV-7912 (RJS)(KNF)

                Defendant.             :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Yoselin Pena ("Pena") commenced this action against the Acting Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision, dated May 18, 2012, finding her ineligible for disability insurance benefits, pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434, and Supplemental Security Income benefits, pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385. Before the Court is the defendant's unopposed motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

Pena alleged disability beginning October 30, 2010. An administrative hearing was held, at which Pena testified, represented by counsel. Medical experts, internist Dr. Charles Plotz ("Dr. Plotz") and psychiatrist Dr. Joseph Vitolo ("Dr. Vitolo"), and a vocational expert also testified. The issue before the ALJ was whether Pena is disabled. The ALJ determined that Pena: (1) met the disability insured status requirements on October 30, 2010, and continued to

meet them through December 31, 2015; (2) has not engaged in substantial gainful activity since October 30, 2010; (3) has the following severe combination of medical impairments: major depressive disorder, anxiety disorder not otherwise specified ("NOS"); (4) does not have an impairment or combination of impairments that meets or medically equals the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform a full range of work at all exertional levels, so long as it has only simple, routine job tasks involving one-or-two-step commands and no more than occasional social interaction; (6) is unable to perform her past relevant work; (7) was born in 1966 and was 44 years old at the time on the alleged disability onset date; (8) is not able to communicate in English and is considered in the same way as an individual who is illiterate in English; and (9) has no transferable job skills from any past relevant work. The ALJ found that, considering Pena's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that she could perform, such as: (1) cleaner II; (2) bagger; (3) final assembler; (4) hand trimmer; and (5) fusing machine feeder. The ALJ concluded that Pena has not been under disability, from October 30, 2010, through the date of the ALJ's decision.

In explaining the rationale for his findings, the ALJ considered, in great detail, Pena's testimony, noting her admission that she does not adhere always to her diabetic diet. The ALJ explained that Pena came from her native Dominican Republic in 1996 and has the equivalent of a 10th grade education there. She is literate in the Spanish language but knows almost no English. The ALJ accepted Pena's testimony that one of her jobs was performing child care services at a day care center, notwithstanding that her earning records identify all her work as self employment. Pena also testified that she worked as a hair stylist and sold clothing out of her

2

home. When the ALJ asked Pena whether she had ever worked as a street vendor, she denied it, but, when her attorney observed that in the work history documents Pena stated that she had worked as a street vendor between 2008 and April of 2010, she admitted that was true. The ALJ inquired of Pena how much weight she had to lift and carry on that job and she answered up to 30 pounds. When Pena's attorney referred to Pena's work history documents stating no lifting of anything as heavy as even ten pounds was involved in her work, Pena admitted that. The ALJ observed that Pena lives with her two daughters, ages 18 and 12, and does most of her own household chores, unless she is feeling too depressed.

      The ALJ found that Pena's record indicates she has been diabetic for some time but her blood sugar is almost always elevated. He observed that references exist in the record from time to time that Pena is not taking her prescribed medication for diabetes. Dr. Muhammad Haque ("Dr. Haque") diagnosed Pena with peripheral neuropathy, but failed to report any objective findings in support of that diagnosis or order any tests to confirm the diagnosis. The ALJ noted that, despite paucity of objective medical findings, Dr. Haque stated, on October 18, 2011, that Pena has a very restricted physical functional capacity. Pena underwent a consultative physical examination by Dr. Benjamin Kropsky ("Dr. Kropsky"), on June 30, 2011, after she recently twisted her ankle. Dr. Kropsky concluded that the only restrictions she would be expected to have would be related to Pena's ankle problem.

      The ALJ considered Pena's psychiatric problems, noting that she attends the Upper Manhattan Mental Health Center ("UMMHC"), where she received therapy from a psychiatric social worker and medication management from a psychiatrist. Pena was diagnosed with major depressive disorder with psychotic features. However, the ALJ noted that the only psychotic features are hearing her name called and occasionally seeing shadows. The ALJ explained that

the only full mental status examination is unremarkable, except for a fair rating of attention and concentration and recent memory. In September 2011, Pena's depressive symptoms were exacerbated due to her sister's death. A medical source statement from UMMHC was prepared by Pena's therapist, on October 18, 2011, and signed by the psychiatrist, Dr. Hilda Brewer ("Dr. Brewer"), on November 10, 2011. The medication at that time was Ability 50 milligrams and Ambien 10 milligrams. Pena was rated "marked" for the activities of daily living, social functioning and concentration, persistence and pace.

On June 30, 2011, Pena underwent a mental status evaluation by Dr. Christopher Flach ("Ced. Flach"). Dr. Flach noted that Pena's affect was apathetic and irritated, her "recall was 2/3," and "she did a limited digit span," attributed to poor motivation. Dr. Flach diagnosed Pena with depressive disorder NOS and panic disorder and rated her as having mild deficit in attention and concentration, relating to other people and dealing with stress. A Disability Determination Service psychiatrist, R. Altmansberger, rated Pena as "moderately impaired" in activities of daily living, social functioning and concentration, persistence and pace.

Dr. Plotz testified that Pena's proven medically-determinable impairments are diabetes mellitus under suboptimal control and obesity. Dr. Plotz noted that diagnoses of diabetic neuropathy are not supported by objective evidence, and no abnormal neurological findings exist in the record. Absent objective evidence, Dr. Plotz opined that Pena has not shown a medically-determinable physical impairment that could be expected reasonably to limit her functioning.

Dr. Vitolo testified that Pena's proven medically-determinable mental impairments are major depressive disorder and anxiety disorder NOS. Pena's activities of daily living and her social functioning are mildly impaired and her concentration, persistence and pace moderately impaired with no episodes of decompensation. Dr. Vitolo opined that, despite her condition,

4

Pena ought to be capable of competitive work so long as the tasks are simple and repetitive, involve one-or-two-step commands and require only occasional social interaction. Dr. Vitolo commented that Pena's concentration and memory seemed unimpaired at the hearing.

The ALJ found the medical experts' testimony credible and supported by credible evidence. The ALJ noted that Dr. Haque's functional assessment includes symptoms that he does not document in the record and Pena does not claim. Moreover, his diagnosis of diabetic neuropathy is not supported by any findings. The ALJ determined that, while Dr. Haque's "raw" records are entitled to considerable weight, his conclusions are entitled to very little weight. The ALJ found the UMMHC medical source statement deficient because it was prepared by the social worker therapist, notwithstanding that Dr. Brewster ultimately co-signed it. The ALJ accepted Dr. Vitolo's opinion that the UMMHC medical source statement does not comport with the evidence. The ALJ found that Pena's testimony was incredible due to many inconsistencies that he observed.

The ALJ determined that Pena has a severe combination of major depressive disorder, anxiety disorder NOS and mild obesity, and that she retains the ability to perform simple, routine job tasks involving one-or-two-step commands and no more than occasional social interaction. The ALJ considered the testimony of the vocational expert, who testified that, assuming a person was of Pena's age, education and work experience and had Pena's nonexertional restrictions, that person could do two medium and three light jobs: (1) cleaner II; (2) bagger; (3) final assembler; (4) hand trimmer; and (5) fusing machine feeder. The ALJ concluded that Pena is not disabled.

### DEFENDANT'S CONTENTIONS

The defendant contends that substantial evidence supports the ALJ's determination that Pena was not disabled. Although Pena alleged disability due to diabetes and accompanying

5

extremity pain and numbness, the clinical evidence shows no signs of neurological dysfunction or disorder, and almost every physical examination conducted by Pena's treating provider revealed normal or non-focal neurological findings. Moreover, no physician requested that Pena undergo diagnostic testing to confirm the presence of a significant neurological disorder. The defendant asserts that Pena had normal range of motion and the ALJ noted her elevated blood sugar and poor compliance with her diabetes medication regiment. The ALJ also relied on Dr. Kropsky's findings that Pena had a normal range of motion, no loss of sensation, normal reflexes and motor strength for her upper and lower extremities, intact hand and finger dexterity and her grip strength was normal. According to the defendant, the ALJ found properly that Pena's physical functioning was not limited significantly.

       The defendant contends that the ALJ also found properly that Pena's mental conditions would not preclude her ability to meet the demands of simple work involving only occasional contact with others. The ALJ noted that the only full mental status examination was by Dr. Brewster, who reported that Pena's speech, concentration, memory and impulse control were fair and her mood mildly or less dysphoric. The defendant asserts that the ALJ also considered Dr. Vitolo's opinion, finding properly that no significant clinical findings existed to support Pena's complaints.

       The defendant contends that the ALJ accorded proper weight to Dr. Haque's opinion because it was not supported by his own clinic notes or those of other examining sources. Moreover, the ALJ considered but rejected the October 2011 opinion by a social worker because it was not consistent with other medical evidence. The defendant asserts that the ALJ's credibility determination was proper, based on the inconsistencies in Pena's testimony and his own observation.

6

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration's] regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

7

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal citations omitted).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). "Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

8

## APPLICATION OF LEGAL STANDARD

The ALJ found that Pena has the residual functional capacity to perform a full range of work at all exertional levels, after considering Pena's physical and mental limitations. The ALJ assessed, properly, that Pena has no physical limitations that would prevent her from doing work at any exertional level, because Pena's physical examinations resulted in normal findings. Furthermore, Pena's examining physicians did not order any diagnostic tests to confirm the presence of any neurological disorder. The ALJ's consideration of medical opinions was in accordance with the relevant regulations, and the ALJ provided an adequate explanation of the weight given them, as well as the reasons for the weight given. The ALJ also provided a detailed explanation for his determination not to accord controlling weight to the UMMHC medical source statement, completed by the social worker therapist and co-signed by Dr. Brewer. While the ALJ recognized that Pena has a severe combination of medical impairments, namely, major depressive disorder, anxiety disorder NOS and mild obesity, he determined, properly, that they do not meet or medically equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ assessed properly Pena's credibility and explained the reasons for his assessment, pointing to many inconsistencies in her testimony. Upon review of the administrative record, the Court finds that the ALJ did not commit any legal error, and the ALJ's determination that Pena is not disabled is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, I recommend that the defendant's motion, Docket Entry No. 21, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 40 Centre Street, Room 2104, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
      May 27, 2015

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE